Clifford Leon ASHLEY,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT,
Respondent-Appellee.

No. 80–5006.

United States Court of Appeals,
Fifth Circuit.
Unit B

March 12, 1981.

Robert E. Warren, Jacksonville, Fla. (Court-appointed), for petitioner-appellant.

* District Judge of the Northern District of Alabama, sitting by designation.

Jim Smith, Atty. Gen. of Florida, Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges and ALLGOOD,* District Judge.

KRAVITCH, Circuit Judge:

Appellant, Clifford Leon Ashley, contends that his conviction in state court of the sale of heroin was obtained in violation of his sixth amendment right to compulsory process of witnesses. We conclude that appellant has demonstrated no prejudice as a result of any alleged governmental misconduct and accordingly affirm the district court's denial of habeas.

*Facts*

From December 1974 through March 1975, Officer Willie Daniels, of the Bay County, Florida, Sheriff's Department, was assigned to the Vice Squad, Narcotics Division, of the Duval County, Florida, Sheriff's Department.[1] Daniels' job was to make undercover drug buys in Jacksonville. A confidential informant, Humphrey Paramore, a/k/a "Loggie," who was known in Jacksonville and was familiar with the community, assisted Daniels in making contacts and setting up transactions. Loggie was paid approximately $100 per week by the Sheriff's Department for these services.

Daniels first met Clifford Ashley in January 1975. Loggie was nearby when this meeting took place and afterwards identified Ashley to Daniels by his street name. After this meeting, Daniels arranged two drug purchases from appellant. On the first occasion, February 5, 1975, Daniels purchased heroin from appellant's brother after arrangements had been made by appellant. On the second occasion, February 18, 1975, Daniels purchased heroin directly from appellant. On April 30, 1975, the

1. Daniels was part of an officer exchange; the purpose of the exchange was to utilize an officer who was unknown in the community in undercover narcotics enforcement.

state filed two informations, based on the two February sales to Daniels, charging appellant with the unlawful sale of heroin.

Meanwhile, in early May, because of his testimony in an unrelated murder case, threats had been made on Loggie's life. The Sheriff's Office provided Loggie with $1,000 and an airplane ticket to California, and on May 16, Officer Troy Smith of the Sheriff's Department drove him to the airport. The Sheriff's Office made no arrangements for further contact with Loggie.

■ In June of 1975 appellant's retained counsel first learned of Loggie's role as an informant. After unsuccessful attempts to locate Loggie, appellant filed a motion to compel the prosecution to produce the informant.[2] At a hearing on August 11, the state represented that Loggie's whereabouts were unknown. The trial judge accordingly denied the motion to compel but placed an affirmative duty on the state to bring the motion to the court's attention if Loggie's location was subsequently ascertained and granted appellant the right to renew the motion at that time.

By August 14, 1975, the state's attorney had notified all officers involved in the case of the affirmative duty to discover and report Loggie's whereabouts. Nonetheless, on September 13, Loggie made a long-distance call to Officer Daniels and, although they talked for twenty minutes, Daniels failed to obtain any information as to Loggie's location.

After two continuances, appellant went to trial in October on the first information. Daniels was the only prosecution witness to the sale; appellant was the sole defense witness. In January appellant was tried on the second information, and at this trial presented no witnesses. Appellant was convicted of both charges and sentenced to two consecutive fifteen-year sentences.

Ashley petitioned for federal habeas corpus.[3] After conducting a hearing, the magistrate recommended denial of the writ on the ground that Ashley had not proved that the state deliberately concealed Loggie. The district court denied the writ but on the ground that Ashley had not demonstrated a colorable need for Loggie's testimony.

*Discussion*

■ The sixth amendment right to compulsory process of witnesses is applicable to the states through the fourteenth amendment. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). There are limits, however, to the defendant's right to use the state's process to compel the attendance of witnesses. This court has noted:

> The right to compulsory process is not absolute, and a state may require that a defendant requesting such process at state expense establish some colorable need for the person to be summoned, lest the right be abused by those who would make frivolous requests.

*Hoskins v. Wainwright*, 440 F.2d 69 (5th Cir. 1971).[4] Indeed, in *Washington* the Supreme Court based its holding on the fact that the state arbitrarily denied the petitioner the right to call a witness "who was physically and mentally capable of testifying to *events that he had personally observed*, and whose *testimony would have been relevant and material to the defense*." 388 U.S. at 23, 87 S.Ct. at 1925 (emphasis added).

2. When a confidential informant's identity is unknown to a defendant, the informant's identity need not always be revealed. *See Roviaro v. United States*, 353 U.S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978). In this case Loggie's identity was already known to appellant when he filed the motion to compel.

3. Appellant raised three grounds for relief in his habeas petition, but the only ground he

presses on appeal is denial of compulsory process.

4. The requirement that the defendant show a colorable need for the witness' testimony is but a corollary of the rule that a habeas petitioner must both allege and demonstrate prejudice in order to obtain the writ. *Lockett v. Blackburn*, 571 F.2d 309 (5th Cir. 1978); *Perry v. Texas*, 456 F.2d 879 (5th Cir. 1972).

In this case appellant has failed to demonstrate how Loggie's testimony would have been beneficial to the defense. Appellant's defense to the charges was that the transactions testified to by Willie Daniels *never* occurred. Daniels testified that no one other than Daniels and appellant were present. Appellant does not claim that Loggie could have furnished an alibi defense; neither does he contend that Loggie would have impeached the general credibility of Daniels. The only suggestion made by appellant as to how Loggie would have helped his defense is based on a statement by Officer Troy Smith. According to Smith, Loggie told him that he was present when Ashley sold heroin to Willie Daniels. Even if this statement were true, and if Loggie so testified, that testimony would not have corroborated appellant's defense that the sales never took place. We find that appellant has not demonstrated a "colorable need" for this informant's testimony so as to invoke the sixth amendment right to compulsory process. *Hoskins, supra.*

Appellant cites *United States v. Avila-Dominguez*, 610 F.2d 1266 (5th Cir. 1980) for the proposition that this court has lessened the showing a defendant must make as to the need for witnesses. In *Avila*, the appellants were convicted of assisting aliens in illegally entering the United States. Appellants challenged their convictions on due process and compulsory process grounds because the government had deported potential witnesses prior to their trial. We affirmed the convictions on two grounds: first, we found "an element of waiver" in the defendants' failure to interview the witnesses prior to deportation; second, and more importantly, the defendants did not offer the "slightest suggestion" as to how the testimony of the deported aliens might have benefited the defendants.

Appellant urges that *Avila* has modified the "colorable need" standard to a "slight suggestion" standard. He argues that even if he has not demonstrated a "colorable need" for Loggie's testimony, he at least has made more than a "slight suggestion" as to how Loggie's testimony may have helped. We find this argument almost frivolous. *Avila* does not signal a change in the applicable standards; the language in *Avila* relied upon by appellant merely emphasized that the defendants in that case had made absolutely no showing that the witnesses sought would benefit the defense.

Although appellant has raised only a compulsory process claim, and not a due process claim, we note that this court has held "[t]he deliberate concealment of a named eyewitness whose testimony would admittedly be material constitutes a prima facie deprivation of due process." *Clark v. Blackburn*, 632 F.2d 531 (5th Cir. 1980); *Freeman v. Georgia*, 599 F.2d 65 (5th Cir. 1979); *Lockett v. Blackburn*, 571 F.2d 309 (5th Cir. 1978), *cert. denied*, 439 U.S. 873, 99 S.Ct. 207, 58 L.Ed.2d 186. In this case, although the state did intentionally cause Loggie to leave the state, there is no evidence that the state deliberately concealed Loggie in order to prevent his testimony in Ashley's case. It is probable, however, that the state may be considered negligent in failing to ascertain the whereabouts of Loggie after they became aware that Ashley desired Loggie's presence for his trial. After the trial court placed an affirmative duty on the state to notify the court if Loggie turned up, Officer Daniels spoke with Loggie but neglected to ask Loggie where he could be reached.

We need not decide whether the *negligent* concealment of a witness is a prima facie constitutional violation because here there is no indication that the testimony of the missing witness would have benefited the defense. In *Lockett v. Blackburn*, 571 F.2d 309 (5th Cir. 1978), after holding that deliberate concealment constituted a prima facie violation, the court stated that the prima facie violation "would ripen into constitutional error upon a showing that the missing witnesses' testimony, when evaluated in the context of the entire record, would create a reasonable doubt of guilt that did not otherwise exist." 571 F.2d at 314. In this case, appellant claims that Loggie would testify that he was present when the transactions occurred. It is inconceivable that such testimony could create a reasona-

ble doubt as to guilt where none existed before.

Similarly, the recent case of *Clark v. Blackburn*, 632 F.2d 531 (5th Cir. 1980) does not alter the result. *Clark* involved *deliberate* concealment of material witnesses. Moreover, the missing witness in *Clark* testified at the federal habeas evidentiary hearing that the petitioner was not involved in the sale of heroin with which he was charged.

In summary, we hold that appellant has not proved a violation of his right to compulsory process because he has failed to demonstrate a colorable need for the missing witness's testimony. Accordingly, we AFFIRM.